# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2791

_____

Rosalie Grissom,                                    *
                                                    *
                    Appellant,                      *
                                                    *    Appeal from the United States
         v.                                         *    District Court for the
                                                    *    Eastern District of Arkansas.
Jo Anne B. Barnhart, Commissioner,                  *
Social Security Administration,                     *
                                                    *
                    Appellee.                       *

_____

Submitted: March 17, 2005
Filed: August 5, 2005

_____

Before RILEY, BOWMAN, and GRUENDER, Circuit Judges.

_____

RILEY, Circuit Judge.

Rosalie Grissom (Grissom) appeals the district court's decision upholding the Commissioner of the Social Security Administration's (Commissioner) denial of supplemental security income (SSI) benefits. We reverse and remand with instructions for the district court to remand the case to the Commissioner for further proceedings.

## I.    BACKGROUND

### A.    Summary of Medical Evidence

Grissom was born in 1955. She completed formal schooling through the seventh grade and later earned a general education degree. Her past work experience includes being employed as a shoe factory worker, auto parts delivery worker, potpourri packer, and furniture factory worker.

Grissom alleges she became disabled on September 25, 2000, when she presented herself to Dr. Roger Troxel (Dr. Troxel), complaining of low back pain. An x-ray revealed spondylolisthesis of L5-S1 and some scoliotic curvature. Dr. Troxel prescribed Feldene and Valium and referred Grissom to a neurosurgeon for follow-up evaluation. Six months later, in March 2001, Grissom sought medical treatment for severe back pain causing numbness and tingling in her feet, chronic shoulder blade pain, and minor suicidal ideation caused by pain. A lumbar CT scan revealed grade II spondylolisthesis at the site of the L5-S1 fusion, a bulging disc, and mild osteoporosis. During the next three months, Grissom sought medical care for back, neck and shoulder pain, arthritis, and anxiety.

On July 1, 2002, Stephen R. Harris, Ph. D. (Dr. Harris), performed a consultative psychological evaluation on Grissom. Testing placed her in the borderline range of intellectual functioning. In his July 3 report, Dr. Harris noted, "Ms. Grissom appears to be an individual who is in the borderline range of intellect who has had back difficulties and pain associated with this." Dr. Harris added, "She seems to focus a good bit of her emotional difficulties upon her physical ailments and may exacerbate her existing pain." Dr. Harris reported that, during Grissom's first marriage, Grissom "had two nervous break downs and had attempted suicide. She saw Dr. Espinosa, a psychiatrist in Popular Bluff, Missouri, for about six months. She had two other times in which she was in treatment at another clinic due to stress problems." On the Medical Assessment of Ability to Do Work-Related Activities (Mental), Dr. Harris rated Grissom's ability to make occupational, performance, and

personal/social adjustments as being fair[1] in most areas, but fair to poor[2] in three occupational adjustment areas: dealing with work stress, functioning independently, and maintaining attention/concentration.

In the same month, Grissom underwent a consultative orthopedic examination performed by Dr. Charles D. Varela (Dr. Varela). X-rays revealed L5-S1 grade II spondylolisthesis. Dr. Varela opined, "Ms. Grissom's subjective complaints do not appear to be borne out on physical exam. She does appear to have a stable fusion at L5-S1 and no neurologic deficits are identified." Based on his examination, Dr. Varela determined Grissom could lift and carry twenty pounds frequently, fifty pounds occasionally, stand and walk for about six hours in an eight-hour day, and Dr. Varela did not identify any impairments in sitting, pushing, or pulling.

## B. Procedural Summary

On September 27, 2000, Grissom filed an application for SSI benefits. Grissom's claim was denied, and she sought review by an administrative law judge (ALJ). On May 9, 2002, the ALJ held a hearing. Grissom testified at the hearing, as did her sister, and Dr. Vance Sales (Dr. Sales), a vocational expert. The ALJ posed to Dr. Sales this hypothetical:

> Assume you're dealing with an individual the same age as the Claimant with the same education background and past work experience. Further assume that the individual is limited to light work exertionally, with the following additional limitations. No repetitive bending and stooping. And superficial interpersonal contact. And finally, the individual could not perform any jobs that would require any highly-complex job tasks.

[1]Fair is defined as the "[a]bility to function in this area is limited but satisfactory."

[2]Poor is defined as the "[a]bility to function in this area is seriously limited but not precluded."

Now given that vocational profile, could this individual perform any of the Claimant's past jobs?

Dr. Sales responded that, based on the hypothetical presented, the claimant would be able to perform three out of four of her past relevant jobs as well as numerous other jobs in the national economy. The ALJ asked Dr. Sales a second hypothetical:

[Assume] the same age, education, and past work experience as before. This time assume that the individual, due to chronic pain and depression, the individual is unable to engage in sustained work activity for a full eight-hour day on a regular and consistent basis. Could this individual perform any of the Claimant's past jobs or any other jobs in the local, regional, or national economy?

Dr. Sales responded, "No, sir, she could not."

After the end of the hearing, the ALJ declared, "We have a lot of allegations in this case and not a whole lot of evidence, and I want to order some consultative examinations." The ALJ then ordered orthopedic and psychological evaluations, which were subsequently performed by Drs. Harris and Varela in July 2002. Following the ALJ's review of both consultative evaluations, the ALJ denied Grissom's claim, and the Appeals Council denied Grissom's request for review, thereby making the ALJ's decision the Commissioner's final decision.

Grissom sought judicial review, contending the ALJ failed to (1) include all of Grissom's mental impairments in his hypothetical question to the vocational expert, and (2) evaluate properly Grissom's credibility and the credibility of her witness. The district court determined the ALJ's hypothetical question to the vocational expert accounted adequately for Grissom's borderline intellectual functioning, and even if the ALJ did not, no evidence existed that Grissom's mental impairments prevented her from performing her previous jobs. The district court also determined the ALJ's credibility analysis was proper. Finding substantial evidence in the record as a whole

4

to support the ALJ's decision, the district court affirmed the final decision of the Commissioner and dismissed Grissom's complaint with prejudice.

## II. DISCUSSION

On appeal, Grissom argues the Commissioner's decision denying her disability claim is not supported by substantial evidence on the record as a whole. Our review is limited to determining "whether the Commissioner's findings are supported by substantial evidence on the record as a whole," Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000), and "[s]ubstantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion," Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000). "Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question." Tucker v. Barnhart, 363 F.3d 781, 784 (8th Cir. 2004) (citing Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996)). The hypothetical question must include all the claimant's impairments supported by substantial evidence in the record as a whole. Id. (citing Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)). However, the hypothetical question need only include those impairments which the ALJ accepts as true. Rappoport v. Sullivan, 942 F.2d 1320, 1323 (8th Cir. 1991).

Grissom contends the ALJ's first hypothetical to the vocational expert was inaccurate and incomplete, because it did not reference her borderline intellectual functioning and other mental impairments, including her poor ability to deal with work stress, to function independently, and to maintain attention and concentration. "We have previously concluded that borderline intellectual functioning, if supported by the record as it is here, is a significant nonexertional impairment that must be considered by a vocational expert." Lucy v. Chater, 113 F.3d 905, 908 (8th Cir. 1997). We have explained: "While borderline intellectual functioning may not rise to the level of a disability by itself, a claimant is nevertheless entitled to have a vocational expert consider this condition along with [her] other impairments to determine how it impacts upon the claimant's residual functional capacity." Id. at

5

909 (citing Pickney, 96 F.3d at 297). We also have noted it is of no consequence whether the claimant's borderline intellectual functioning pre-dated her application; the vocational expert still must consider it along with the claimant's other impairments. See Pickney, 96 F.3d at 297 n.3.

The Commissioner argues Grissom did not allege in her application or at her hearing borderline intellectual functioning as a disabling or limiting impairment. However, the ALJ expressly found Grissom's IQ scores "are in the borderline category of intellectual functioning." The ALJ also found Grissom had a "degree of functional limitation . . . indicative of a mental condition that imposes a significant restriction on [Grissom's] ability to perform basic work activities," although her "mental impairment does not approach the seriousness contemplated by the listings." Grissom's borderline intellectual functioning was sufficiently presented to and recognized by the ALJ to require addressing on judicial review. See, e.g., 20 C.F.R. § 416.912(a) (stating the Commissioner will consider impairments raised and "about which we receive evidence").

Although the ALJ's decision recognizes Dr. Harris's opinion regarding Grissom's borderline intellectual functioning, the ALJ's decision neither accepts nor expressly rejects Dr. Harris's findings regarding Grissom's fair to poor abilities in three occupational adjustment areas: dealing with work stress, functioning independently, and maintaining concentration and attention. The ALJ determined Grissom was not disabled without a vocational expert clearly and directly assessing Grissom's residual functional capacity in light of her borderline intellectual functioning and fair to poor abilities to deal with stress, to function independently, and to maintain concentration and attention. We, therefore, conclude the ALJ's decision is not supported by substantial evidence. See Smith v. Shalala, 31 F.3d 715, 717 (8th Cir. 1994) (declaring, "[i]n light of the flawed hypothetical," which omitted reference to claimant's mental impairments, "the Secretary has not shown [claimant] retains sufficient residual functional capacity to perform gainful activity").

6

The ALJ must make further findings related to the fourth and fifth steps of the sequential analysis, i.e., whether all of Grissom's impairments, including Grissom's borderline intellectual functioning, prevent her from doing her past relevant work, and, if so, whether other work exists in significant numbers in the national economy to accommodate her residual functional capacity.

## III.   CONCLUSION

Accordingly, we reverse the judgment of the district court and remand with instructions to return the case to the Commissioner for proceedings consistent with this opinion.

_____