# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1315

_____

Andrew Swope,                              *
                                           *
            Appellant,                     *
                                           *    Appeal From the United States
      v.                                   *    District Court for the
                                           *    Western District of Missouri.
Jo Anne B. Barnhart, Commissioner          *
of Social Security,                        *
                                           *
            Appellee.                      *

_____

Submitted:  November 14, 2005
Filed:  January 31, 2006

_____

Before SMITH, HEANEY, and BENTON, Circuit Judges.

_____

HEANEY, Circuit Judge.

Andrew Swope appeals from a judgment of the United States District Court for the Western District of Missouri affirming the decision of an administrative law judge (ALJ), on behalf of the Commissioner of the Social Security Administration (Commissioner). The ALJ found that Swope was not entitled to a period of disability insurance benefits nor eligible for Supplemental Security Income under the Social Security Act. We reverse and remand.

Swope, a thirty-nine year old male, made three applications for social security disability benefits. The first two were denied at the administrative level, and no

appeal was taken. In the instant application, Swope alleged an onset date of disability of September 26, 1998. His claim was denied at each administrative proceeding. Swope then filed a petition for review with the United States District Court for the Western District of Missouri.

The evidence presented to the ALJ established that Swope was initially employed in 1985, working first as a newspaper bagger and then as a security guard. He earned from $5,000 to $8,000 a year until he was injured on the job in 1995. Following his workplace injury, Swope's earnings were sharply reduced due to reasons that he attributes to his injury. The ALJ concluded that the medical evidence supported his finding that Swope had the following severe impairments: "1. degenerative disc disease of the thoracic and lumbar spine, with a bulging disc at L5-S1, L5 spondylolisthesis, and history of a compression fracture at T11; 2. hypertension; and 3. obesity." (Admin. R. at 20.) He also found, however, that these impairments, when considered either singly or in combination, did not meet or equal a listed impairment. He went on to find that Swope could not return to his past relevant work as a security guard because of his limitation in walking. A vocational expert, called by the ALJ, testified that there were several jobs in the national and local economies that Swope could perform.

After reviewing the testimony, the ALJ determined that Swope's contentions that he was disabled because of pain were not credible because: (1) they were not supported by medical, clinical, and laboratory evaluations; (2) he has only moderately limited range of motion, little or no muscle weakness, normal reflexes, and the ability to ambulate effectively without assistive devices; (3) Swope's credibility with respect to the degree of pain he incurs was further diminished by his daily activities, including doing dishes, shopping, carrying groceries into the house, driving a car, mowing the lawn, and fishing; (4) Swope takes no prescription medication for pain and no surgery has been recommended by any treating source for Swope's condition, who have

recommended only exercise and weight loss; and (5) Swope's testimony that he had fallen six times because of his disability was not supported by the record.

On appeal to this court, Swope contends that the Commissioner's decision denying his claim for disability and SSI benefits is not supported by substantial evidence in the record as a whole. He contends that the ALJ wrongly discredited his testimony and that of his witnesses. He further asserts that the ALJ overlooked uncontroverted evidence that Swope suffers from significant nonexertional impairments, including disabling pain, the need to lie down frequently because of fatigue caused by his condition, and borderline intellectual functioning.

After reviewing the record, we find it necessary to remand this matter for further proceedings. The ALJ's hypothetical to the vocational expert failed to reference Swope's limited intellectual functioning. Swope underwent a Wechsler Adult Intelligence Scale-Revised IQ test on October 26, 1995, that revealed a verbal IQ of 82, performance IQ of 88, and full-scale IQ of 83. These scores place Swope in the category of borderline intellectual functioning. See Hutsell v. Massanari, 259 F.3d 707, 709 n.3 (8th Cir. 2001) ("Borderline intellectual functioning is a condition defined as an IQ score within the 71-84 range while mental retardation is a score of about 70 or below."); see also Diagnostic and Statistical Manual of Mental Disorders at 741 (4th ed. Text Revision 2000).

We recognize that Swope's scores do not support a finding of disability as a listed impairment,[1] but that does not alter our conclusion that his intellectual

_____

[1] The required level of severity for a listed impairment requires, inter alia:

    B. A valid verbal, performance, or full scale IQ of 59 or less;
OR
    C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and

limitations should have been included in the hypothetical posed to the vocational expert. In fashioning an appropriate hypothetical question for a vocational expert, the ALJ is required to include "all the claimant's impairments supported by substantial evidence in the record as a whole." Grissom v. Barnhart, 416 F.3d 834, 837 (8th Cir. 2005) (emphasis added). Time and again, this court has "'concluded that borderline intellectual functioning, if supported by the record as it is here, is a significant nonexertional impairment that must be considered by a vocational expert.'" Id. (quoting Lucy v. Chater, 115 F.3d 905, 908 (8th Cir. 1997)); see also Pickney v. Chater, 96 F.3d 294, 297 (8th Cir. 1996). There is no indication in the ALJ's order that he disbelieved the results of Swope's IQ tests,[2] and thus we are of the firm conviction that it was error not to include those results in the hypothetical posed to the vocational expert.

Swope's case is illustrative of why our court deems it critical for ALJs to pose thorough and complete hypothetical questions to vocational experts. In this case, the ALJ, in posing a hypothetical to the vocational expert as to whether Swope could perform any other jobs in the national economy, did not include any reference to Swope's intellectual capacity. In response to the hypothetical, the vocational expert opined that Swope could perform other jobs in the national and local economies, including security monitor (of which there were 750 jobs in Missouri and 76,000 in the national economy), gatekeeper (2,500 jobs in Missouri and 285,000 nationally),

---

significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

[2]Helping Hand of Goodwill Industries also did an evaluation of Swope's vocational abilities. (Admin. Rec. at 231-36.) From our review of the record, it appears that this evaluation was not considered by the ALJ and was not referred to by any party on appeal. On remand, the ALJ may consider this report, along with the IQ test results previously referred to, in fashioning an appropriate hypothetical to the vocational expert.

and sedentary cashier (3,200 jobs in Missouri and 165,000 nationally).  (Admin. R. at 401.)  The problem with failing to advise the vocational expert as to Swope's mental limitation is that the jobs the vocational expert said Swope could perform all appear to be beyond his capabilities.  In the Dictionary of Occupational Titles (DOT), the position of gate guard requires a reasoning level of 3 and language development level of 2, § 372.667-030, Gate Guard (Any Industry); Security Officer, reasoning level 4, language development level 4, § 189.167-034, Security Officer (Any Industry).  All jobs listed in the DOT under the heading of Cashiers and Tellers, with the exception of the position of "Change Person," require a  reasoning level of at least 3, and language development level of at least 2.  See generally § 211, Cashiers and Tellers.  Thus, Swope would have to function at a reasoning level 3 and language development level 2 to qualify for the least of these positions.  Reasoning level 3 is defined as the ability to:

> Apply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations.

Id. at 1011.

To qualify as language development level 2, Swope would have to meet the following benchmarks:

> [P]ossess a vocabulary of 5,000-6,000 words; read at a rate of 190-215 words per minute; write compound and complex sentences, using the cursive writing style; use proper end punctuation in his writings; and use adverbs and adjectives in his writing.

Id. He must also "[s]peak clearly and distinctly with appropriate pauses and emphasis, correct punctuation, variations in word order, using present, perfect, and future tenses." Id.[3]

Given the record before this court, we harbor serious doubts that Swope could perform the positions the vocational expert suggested. We believe that question, however, is more appropriately answered by the vocational expert in the first instance. Accordingly, we remand this matter to the ALJ to re-call a vocational expert and to include in any hypothetical posed to him an explanation of Swope's intellectual limitations, and thereafter to determine whether, in light of the full record, Swope is nonetheless able "to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc).[4]

_____

[3]The record reveals that Swope also has a severe articulation defect. Neither the ALJ nor the parties reference this impairment as a basis for a disability finding.

[4]Although not dispositive to our decision, we do not agree with the ALJ that Swope's daily activities are a significant reason for discrediting his complaints of disabling pain. In numerous cases we have noted that "the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work." Hogg v. Shalala, 45 F.3d 276, 278 (8th Cir. 1995); see also Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir. 1996) (finding making bed, preparing food, performing light housekeeping, grocery shopping, and visiting friends, unpersuasive reasons to deny benefits).