# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1425

_____

Gary W. Finch,                              *
                                            *
            Appellant,                      *
                                            *    Appeal from the United States
      v.                                    *    District Court for the
                                            *    Southern District of Iowa.
Michael J. Astrue, Commissioner             *
of Social Security,                         *
                                            *
            Appellee.                       *

_____

Submitted: September 24, 2008
Filed: November 24, 2008

_____

Before WOLLMAN, SMITH, and GRUENDER, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Gary Finch appeals from the district court's[1] order affirming the Commissioner's denial of disability insurance benefits. We affirm.

---

[1]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

I.

Finch is a sixty-three-year-old man with a high school education, two years of community college, and training in heating and refrigeration repair. For twenty years he worked for the same company as a heating and air conditioner servicer and appliance servicer. According to Finch, he was let go in 1999 because he was unable to keep up with the workload. He lives alone and is able to care for his basic needs and perform some household chores.

Finch filed for disability on June 28, 2000, basing his claim on a lack of mobility in his back, neck, and right arm, as well as vertigo. His date last insured is December 31, 2004. Following a hearing and a supplemental hearing, an administrative law judge (ALJ) denied Finch's claim. After the Appeals Council denied his request for review, Finch filed a civil action in the United States District Court. On March 16, 2004, the district court remanded his case for further proceedings at the request of the Social Security Administration. On August 24, 2005, a second hearing was held before the ALJ. The ALJ concluded that the combination of Finch's impairments was severe, but that he did not have an impairment or combination of impairments listed or medically equal to a listed impairment. The ALJ found that although Finch was unable to perform his past relevant work, there were jobs in the national economy that he could perform and thus concluded that Finch was not disabled.

After the Appeals Council denied Finch's request for review, he again filed a complaint in federal district court. The district court granted summary judgment to the Commissioner, affirming the ALJ's decision.

On appeal Finch argues that the Commissioner's decision should be reversed because the ALJ failed to properly credit Finch's subjective complaints of pain, did

not properly evaluate the evidence in determining Finch's residual functional capacity, and improperly substituted his own opinion for that of a medical examiner's.

## II.

We will uphold the Commissioner's decision if it is supported by substantial evidence on the record as a whole. Harvey v. Barnhart, 368 F.3d 1013, 1015 (8th Cir. 2004). "Substantial evidence is 'less than a preponderance but is enough that a reasonable mind would find it adequate to support' the conclusion. Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004) (quoting Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002)). This standard of review requires us to consider the evidence that supports the Commissioner's decision as well as the evidence that detracts from it. Eichelberger, 390 F.3d at 589. That we would have come to a different conclusion, however, is not a sufficient basis for reversal. Id. "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996).

## A.

Finch argues that the ALJ erred in assessing his credibility. The ALJ found that Finch's complaints of pain were not entirely credible in light of the evidence as a whole. To assess a claimant's credibility, the ALJ must look to the claimant's daily activities; the duration, frequency, and intensity of pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). The claimant's work history and the absence of objective medical evidence to support the claimant's complaints are also relevant. Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000). "An ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole." Porch v. Chater, 115 F.3d 567, 572 (8th Cir. 1997). "[Q]uestions of credibility are for the [ALJ] in the first instance. If an ALJ

explicitly discredits a claimant's testimony and gives a good reason for doing so, we will normally defer to that judgment." Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006) (quoting Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990)).

The ALJ addressed the Polaski factors and noted inconsistencies in the record that led him to conclude that Finch was not as limited as he claimed. The ALJ noted that Finch is able to care for himself and maintain his home, including mowing the lawn, removing snow (albeit slowly), driving, and visiting friends. Finch reported falling off a ladder on two occasions. Finch was thrown from a horse on two occasions and was involved in a motorcycle accident. The ALJ recognized that Finch had been hospitalized as a result of some of these mishaps, but he found it noteworthy that Finch was able to engage in the activities that gave rise to those accidents during the time that he was allegedly unable to work.

The ALJ also concluded that Finch's complaints were not supported by objective medical evidence. The record shows that an objective medical cause has not been established for Finch's complaints of low back pain and abdominal pain. Finch's subjective complaints of pain were inconsistent with the findings of consultative examiners. In January 2005, Stanley Smith, Ph.D., described Finch as appearing to be in only mild discomfort, yet Finch described his pain level at a seven out of ten. Christine Deignan, M.D., Rodney Carlson, M.D., and Lori O'Dell McCollum, Ph.D., all concluded that Finch was less limited than he asserted. Finch's treating physician, William Davidson, M.D., described Finch as having a histrionic personality. Finch's pain clinic physician, Michael A. Swanson, M.D.—whose notes reflect repeated skepticism about the information Finch provided to him—described Finch's pain history as inconsistent.

Finch argues that he has consistently sought medical treatment and has an unbroken earnings record from 1961 to 1999. Although these two factors weigh in Finch's favor, it was for the ALJ to weigh all the evidence and make a credibility

finding.  After reviewing that evidence, we cannot say that the ALJ's credibility determination is not supported by the record as a whole.

## B.

Finch argues that the ALJ's residual functional capacity assessment is in error because it ignored Finch's treating physician's opinion and failed to take into account Finch's cognitive limitations.  Although a treating physician's well-supported opinion is generally accorded substantial weight, "it is not conclusive because the record must be evaluated as a whole."  Howe v. Astrue, 499 F.3d 835, 839 (8th Cir. 2007) (citing Charles v. Barnhart, 375 F.3d 777, 783 (8th Cir. 2004)); see also Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000).  Moreover, "[t]he ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole."  Wagner v. Astrue, 499 F.3d 842, 848 (8th Cir. 2007).  The ALJ is charged with the responsibility of resolving conflicts among medical opinions.  Id.

## 1.

Finch's primary challenge to the ALJ's physical residual functional capacity determination is his contention that the ALJ dismissed the opinion of Finch's treating physician, Dr. Kurt Andersen, particularly Dr. Andersen's statement that Finch could not sit or stand for more than fifteen minutes at a time without experiencing increased pain.  The ALJ found instead that Finch could sit or stand for thirty minutes at a time.

The ALJ did not dismiss Dr. Andersen's opinion, but instead detailed the ways in which it was inconsistent with other medical opinions in the record.  Specifically, the ALJ noted that Dr. Carlson, a consultative physician, concluded that Finch could sit or stand for six hours with normal breaks during an eight-hour work day.  Another consultative physician, George X. Trimble, M.D., confirmed this assessment.

Although a third consultative physician, Dr. Newton B. White, agreed with Dr. Andersen that Finch could not sit or stand for more than fifteen or twenty minutes, the ALJ noted inaccurate statements in Dr. White's opinion that undermined his conclusion.

Additionally, the ALJ noted that at the time Dr. Andersen made his February 2003 assessment, Finch was recovering from a pelvic fracture and deep vein thrombosis, from both of which ailments he experienced a full recovery. Although Dr. Andersen made similar statements in January and April of 2005, he qualified them by stating that they were based on Finch's subjective pain reports and an MRI study that did not provide an explanation for Finch's low back pain complaints. Given that the ALJ found Finch's subjective reports of pain not entirely credible, a residual functional capacity assessment based on those reports was appropriately not given substantial weight. Accordingly, the ALJ's rejection of Dr. Andersen's opinion regarding Finch's physical limitations is supported by substantial evidence in the record.

2.

Finch also argues that the ALJ should have included Finch's limited mental capacity in his finding of residual functional capacity and in the hypothetical to the vocational expert. "In fashioning an appropriate hypothetical question for a vocational expert, the ALJ is required to include all the claimant's impairments supported by substantial evidence in the record as a whole." Swope v. Barnhart, 436 F.3d 1023, 1025 (8th Cir. 2006) (citing Grissom v. Barnhart, 416 F.3d 834, 837 (8th Cir. 2005)).

On June 4, 2000, Finch underwent a nerve root injection that was improperly performed. Finch became dazed, confused, and had difficulty talking. Finch argues that this injection resulted in permanent decreased mental capacity. On November 8,

2002, Finch underwent a psychological assessment that included intellectual and memory testing, performed by Dr. McCollum. The results showed that Finch had a verbal IQ of ninety-three, a performance IQ of eighty-four, and a full scale IQ of eighty-nine. Dr. McCollum concluded that Finch's intellectual functioning is in the low average range. Based on Finch's past work experience and his education, she opined that Finch had experienced cognitive decline and had previously had at least average intelligence.

The ALJ detailed Dr. McCollum's conclusions, but gave significant weight to Charlene Bell's, Ed.D., contradictory testimony. At the hearing, Dr. Bell stated that a diagnosis of cognitive disorder was not clinically established by the record. Dr. Bell's opinion is supported by Dr. Smith, who concluded that Finch's IQ scores were normal and did not necessarily represent a decline in functioning. The ALJ also noted that Finch's medical records indicated that he had recovered from the effects of the faulty injection. The ALJ specifically found that Finch's mental impairments did not restrict his daily activities, social functioning, or concentration. Although there is evidence in the record that might sustain a different finding, the ALJ's determination is supported by substantial evidence.

Additionally, the ALJ was not required to present Finch's limited mental capacity to the vocational expert. Although a claimant's borderline intellectual functioning must be included in the hypothetical to the vocational expert, Swope, 436 F.3d at 1024-25, Dr. McCollum characterized Finch's intellectual functioning as within the low average range and stated that he would likely score within the full scale IQ range of eighty-five to ninety-three in future testing. Thus, there is substantial evidence that Finch does not exhibit borderline intellectual functioning.

C.

Finch argues that the ALJ improperly substituted his own opinion for that of Dr. White, who stated that Finch's ataxia equaled a listed impairment. An "ALJ must not substitute his opinions for those of the physician." Ness v. Sullivan, 904 F.2d 432, 435 (8th Cir. 1990). As noted above, however, "[t]he ALJ may reject the opinion of any medical expert where it is inconsistent with the medical record as a whole." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002).

Dr. White testified at the hearing before the ALJ via telephone. Although it is not entirely clear from the record which listing Dr. White was referring to during his testimony, the ALJ concluded that he was likely discussing section 11.04(B). Listing 11.04(B) involves "significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." Dr. White did not conclude that Finch met this listing, only that he equaled it. The regulations allow a finding that a claimant equals a listing when his impairments or combination of impairments are of equal medical significance to the required criteria. 20 C.F.R. § 404.1526. Medical equivalence must be supported by medical findings; symptoms alone are insufficient. See id.; Social Security Ruling 86-8. Section 404.1526(e) places "the responsibility for deciding medical equivalencies . . . with the [ALJ] or Appeals Council."

The ALJ noted that Finch's motor functioning has not played a significant role in his overall clinical picture during the relevant time period. Although Finch's medical records show occasional difficulty with the use of his arms and hands, other medical evidence shows normal grip strength and dexterity. Similar inconsistencies exist with respect to Finch's leg strength and gait. Finch's symptoms of ataxia resulting from the faulty injection are also inconsistent. Finally, as noted above, the ALJ assigned little weight to Dr. White's opinion. Accordingly, the ALJ's finding

that Finch did not equal a listed impairment is supported by substantial evidence and thus must be upheld.

The judgment is affirmed.

_____