# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1186

_____

| | | |
|---|---|---|
| Christina M. Wiese, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Southern District of Iowa. |
| | * | |
| Michael J. Astrue, Commissioner | * | |
| of Social Security, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 24, 2008
Filed: January 16, 2009

_____

Before BYE, BEAM and SHEPHERD, Circuit Judges.

_____

BEAM, Circuit Judge.

Christina Wiese appeals from the district court's[1] order affirming the Commissioner's denial of supplemental security income. We affirm.

_____

[1]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

## I.    BACKGROUND

At the time of the 2006 hearing before the Administrative Law Judge (ALJ), Wiese was twenty-five years old and unemployed. The last time she worked was in 2003, and even then only for two months. Although she had originally filed for benefits under Title II and Title XVI, only her application for supplemental security income remained unresolved.

Wiese filed for disability in 2001 on the basis of her polycystic ovarian syndrome, morbid obesity, fatigue, severe pain, panic attacks and headaches. By her own estimation she did not, at any time during the relevant time period, weigh less than 350 pounds and states she is 5'5" tall. At the time of the most recent hearing, the ALJ considered the following severe combination of impairments: polycystic ovarian disorder, hypothyroidism, obesity, glucose intolerance, a history of asthma, allegations of medically determinable impairments resulting in complaints of pain in multiple joints, major depressive disorder, a history of panic attacks and anorexia, a history of possible bipolar affective disorder, obsessive compulsive disorder and general anxiety disorder. These impairments did not, however, in combination, meet or medically equal one of the listed impairments. Additionally, Wiese amended her onset date, through her attorney, to May 31, 2004, at this hearing.

Based on a review of the evidence, including Wiese's own testimony at the August 2006 hearing, the ALJ determined Wiese was not disabled. In doing so, the ALJ held that Wiese had the residual functional capacity (RFC) to lift between ten and twenty pounds, stand ten to twenty minutes at a time with the ability to walk and stand for six hours in an eight-hour day, and sit two to three hours at a time for a total of at least six hours in an eight-hour day. The ALJ further held that Wiese could not perform very complex or technical work, but could do simple, routine repetitive work not requiring constant, close attention to detail; could occasionally interact with the public; would require occasional supervision; could work at no more than regular

pace; and could not perform high stress work. Based on this RFC determination, the ALJ found Wiese capable of performing past relevant work as a data entry clerk, film sorter and sales attendant.

After the Appeals Council denied Wiese's request for review, she filed a complaint in federal district court. The district court affirmed the Commissioner's decision.

On appeal Wiese argues that the Commissioner's decision should be reversed because the ALJ failed to adequately consider the medical opinions of Wiese's treating physicians, primarily Dr. Doyle, her psychiatrist, and her therapist, Judy Prochaska, and gave too much weight to the testimony of the non-examining medical expert. She further argues that the ALJ failed to evaluate Wiese's extreme obesity as it might affect her ability to sleep and perform work activities, and failed to include her diagnosed ailments of fibromyalgia and restless leg syndrome in his analysis. Finally, Wiese claims that the ALJ failed to adequately elaborate on the adverse credibility finding in this case.

## II.    DISCUSSION

"We will uphold the Commissioner's decision if it is supported by substantial evidence on the record as a whole." Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is 'less than a preponderance but is enough that a reasonable mind would find it adequate to support' the conclusion." Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004) (quoting Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002)). "This standard of review requires us to consider the evidence that supports the Commissioner's decision as well as the evidence that detracts from it." Finch, 547 F.3d at 935. That we would come to a different conclusion, however, is not a sufficient basis for reversal. Id. "It is not the role of this court to reweigh the evidence presented to the ALJ or to try the issue in this case de

novo." Loving v. Dep't of Health and Human Servs., Sec'y, 16 F.3d 967, 969 (8th Cir. 1994). "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996).

With these guidelines in mind, we turn to the record in this case.

## A.    Treating Physician Evidence

According to Wiese, substantial evidence does not support a finding that she can perform sedentary semi-skilled work. Wiese contends that the ALJ erroneously disregarded selected opinions of, primarily, her treating psychiatrist, Dr. Doyle, and her therapist, Judy Prochaska, without good cause and instead relied upon the opinion of Dr. Ascheman, a medical expert who did not personally examine Wiese. The Social Security Administration (SSA) regulations establish that an ALJ will evaluate every medical opinion, regardless of its source, and sets forth how the ALJ weighs medical opinions. According to 20 C.F.R. § 404.1527(d)(2), the ALJ will give controlling weight to a treating source's opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. Otherwise, the ALJ "consider[s] all of the following factors in deciding the weight [to] give to any medical opinion": (1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors. 20 C.F.R. § 404.1527(d).

Wiese claims that the ALJ "gave no weight whatsoever" to the opinions of Judy Prochaska, a licensed social worker, and Dr. Doyle, a psychiatrist who treated Wiese "for several years." However, the ALJ did not entirely disregard the opinions of these treating sources, but rather found that the medical evidence as a whole did not support

-4-

a finding of disability. The ALJ gave greater weight to the testimony of the medical expert, the claimant's self reports and the testimony of the claimant.

Wiese argues on appeal that there are no inconsistencies in this record regarding the effects of her obesity on her mental state nor on the effects of restless leg syndrome on her ability to sleep and overcome daytime sleepiness. Nor does this record, she claims, reflect any inconsistencies regarding her "severely restricted" social and daily living activities. Wiese points out that Dr. Rabinowitz noted that Wiese's knees were swollen and limited in their range of motion, which Wiese claims contradicts the ALJ's finding that she can stand for six hours in an eight-hour day. She also highlights that the record is replete with evidence that she is depressed and has low-self esteem, is limited in her daily activities that include no visitations, no social activities and only occasional house cleaning. Dr. Doyle noted in September 2006 that Wiese was isolated, homebound, and not realistically employable. Wiese herself testified that she has no friends and does not partake in any regular activities. She paints a picture of herself as homebound and immobilized by her excessive weight and low self-esteem. Specifically as to Dr. Doyle, who treated Wiese for two years from March 2004 to July 2006, Wiese indicated two months before her onset date of May 31, 2004, that she did feel better overall. She stresses, however, that her condition only worsened thereafter and in September, she self-reported that she was doing "really bad."

There are inconsistencies in this record, however. First, the discussion by Dr. Rabinowitz about Wiese's knees and range of motion took place in 2001 during a disability examination well before the relevant onset date. Further, there is no diagnosis or suggested treatment plan in Dr. Rabinowitz's notes. Likewise, in 2005, Dr. Doyle continued to monitor Wiese's self-esteem, anxiety, mood, and concentration and ranked various areas of observation on his own scale of zero to ten, with zero being "the worst in my life." Between June 2005 and August 2005 these rankings revealed that in the areas of self-esteem, anxiety, mood and concentration, Dr. Doyle

ranked Wiese between 1.5 and 6, with only one instance of a 1.5 ranking, one ranking at a 2.5, and nine instances of rankings at or above 4.5 on his scale. On the whole, these assessments do not indicate the severity of symptoms and restrictions Wiese highlights. Dr. Doyle did, however, establish Wiese's diagnoses for "major depression, attention-deficit, hyperactivity disorder and morbid obesity." Dr. Doyle diagnosed Wiese with ADD or ADHD from at least March 2004 through July 2006.

Further, in the summer of 2005, Dr. Doyle saw Wiese and detailed her subjective self-reports. When Wiese complained of anger management issues and personal stresses, Dr. Doyle objectively reported that her thought processes were logical, sequential and goal-oriented. His objective assessment remained consistent with very few abnormal findings and he persistently noted that Wiese functioned within normal limits. And, Dr. Doyle further made notations in his treatment notes regarding Wiese's educational achievement, her ability to care for her father, and her desire and attempt to start a new home business, as well as develop romantic relationships. Taken together, these treatment records are inconsistent with the checklist forms Dr. Doyle completed regarding Wiese's work-related activities and ability. On the forms, Dr. Doyle reported that she had "poor" or no ability to sustain an ordinary routine, deal with stress and maintain regular attendance, among other deficiencies. We recognize that the purposes of Dr. Doyle's treatment notes and his assessment on the checklist forms differ, but even with these differences in mind, inconsistencies abound. It would seem that someone with normal affect and cognition intact would not function at the "poor or none" level in the many areas Dr. Doyle indicated. The entries in the checklist form simply do not have foundation in the medical signs and symptoms noted in his treatment records. The two analyses just cannot be reconciled.

Judy Prochaska, a treating therapist Wiese highlights as being forgotten in the ALJ's opinion, performed an initial assessment on Wiese in December 2003, before the relevant onset date at issue here. This assessment also indicated Wiese's affect

was "congruent," her intellectual functioning average and her thought content logical and relevant. As a result of this assessment, Prochaska recommended individual therapy. It appears from the record that Wiese continued treatment with Prochaska for approximately eight sessions with the same assessment. Wiese requested that Prochaska close her case in January 2004. On appeal, Wiese fails to articulate what, exactly, the ALJ failed to consider regarding Prochaska's treatment notes. The ALJ addressed Prochaska's treatment notes, even though this treatment pre-dated the relevant onset date, and acknowledged that these treatment notes tend to show merely continued care and complaints. Prochaska's checklist form regarding Wiese's work-related activities and ability completed in January 2004 adds very little to the discussion as Prochaska rates Wiese "good" and "fair" in all areas, only indicating that Wiese might average four absences per month at work. This evidence in no way detracts from the ALJ's assessment.

The ALJ was entitled to consider all of the evidence in the record. Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005). In doing so, the ALJ correctly pointed out certain inconsistencies in great detail. Given these inconsistencies the ALJ could, and did, give greater weight to the opinion of Dr. Ascheman who testified at the hearing and generally opined that Wiese had no restrictions on activities of daily living, mild limits in maintaining social functioning and some mild limitations of ability to maintain concentration, persistence or pace.

We emphasize that it is not for this panel to reweigh the evidence. That we might be inclined to come out differently on this issue is of no accord. Quite simply, reasonable minds could come to the same conclusion as the ALJ on this record.

## B.    Evidence of Other Diagnoses

Wiese also contends that the ALJ did not properly consider her obesity and how her excessive weight contributed to or exacerbated her other physical or mental

ailments–namely a sleep disorder and depression. She concedes that the ALJ considered her obesity in regard to her ability to stand but argues he did not properly consider it as it affects her self-esteem, depression, fatigue, her ability to perform work activities and her ability to be in public. We acknowledge that "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." SSR 02-1p. Here, the ALJ did consider Wiese's obesity and how this impairment, in combination with her other impairments, affected Wiese's limitations, not just her ability to stand. Indeed, given Wiese's excessive weight, its presence pervades her treatment notes and her own testimony. In doing so, the ALJ determined that her obesity did not exacerbate the intensity, persistence, or limiting effects of her symptoms.

Additionally, Wiese claims the ALJ failed to mention particular diagnoses entirely in the severity finding, namely restless leg syndrome and fibromyalgia, and how they affect her ability to sleep and the effects of that lack of sleep on her ability to perform tasks. Her basis for establishing a fibromyalgia diagnosis is based upon notes written by Dr. Rabinowitz in November 2001 indicating that Wiese presented with "probable chronic fibromyalgia." As to the restless leg syndrome, Wiese cites a letter written by Dr. Thakkar in August 2002 after an examination of Wiese, wherein he notes that Wiese complains of restless leg syndrome. He does not diagnose her with such, however. And, later 2003 notes from the Davenport Clinic indicate treatment for restless leg syndrome. Notwithstanding the fact that the medical evidence regarding these two ailments predates the relevant onset date here, and there is little medical evidence supporting these allegations after the onset date, the ALJ did consider Wiese's self-claimed, persistent fatigue as well as her treatment for such, in his findings, which is the effect Wiese now argues was not analyzed. Substantial evidence supports the ultimate analysis.

## C.     Wiese's Credibility

Reviewing the Polaski[2] factors, Wiese claims that the ALJ failed to make a "formal finding on credibility."  She correctly states that an ALJ may not discount a claimant's subjective complaints solely because the objective medical evidence does not fully support them.  SSR 96-7p; Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  She refers again to her subjective complaints of social inadequacies, excessive sleep during the day, fatigue, memory and concentration problems, grinding in her knees, and morbid obesity, all of which the ALJ acknowledged but which Wiese argues the ALJ fails to specifically discredit.

The ALJ specifically held that Wiese's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," but clearly stated that in his opinion her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  The ALJ then went on to apply the correct legal standard for evaluating a claimant's subjective allegations, including complaints of pain.  See Polaski, 739 F.2d at 1322.

Even though the ALJ did not, as Wiese points out, discuss specifically which of Wiese's allegations he found incredible, it is apparent from the opinion's entirety that the inconsistencies between the medical evidence, Wiese's own claims, and Wiese's daily activities form the basis of the ALJ's finding.  Indeed, the ALJ wrote nearly four full pages of analysis regarding the consistency between Wiese's self-reports contained in the record, her treating physicians' notes and assessments, the medical evidence and the hearing testimony.  In doing so, the ALJ provided a thorough analysis of the inconsistencies he noted in the record, and those inconsistencies are supported by the record.  See SSR 96-7p (discussing the two-step process for evaluating symptoms and directing that the ALJ make a finding on the

---

[2]Polaski v. Heckler, 739 F.3d 1320 (8th Cir. 1984).

credibility of a claimant's statements based on a consideration of the entire case record, including medical signs and laboratory findings as well as the individual's own statements). Based on all of these findings, the ALJ established the stated RFC, which we find is supported by substantial evidence.

## III.  CONCLUSION

We agree with the ALJ's conclusion in this case that, while severe, Wiese's impairments are not so limiting that she is unable to work. For the reasons stated herein, we affirm.

_____