# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-2041

_____

RaShina Young

*Plaintiff - Appellant*

v.

Michael J. Astrue, Commissioner of Social Security

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Jonesboro

_____

Submitted: November 13, 2012
Filed: January 2, 2013

_____

Before RILEY, Chief Judge, WOLLMAN and MELLOY, Circuit Judges.

_____

RILEY, Chief Judge.

RaShina Young appeals from the district court's[1] decision affirming the Commissioner of Social Security's denial of social security benefits. We affirm.

---

[1]The Honorable Joe J. Volpe, United States Magistrate Judge for the Eastern District of Arkansas, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

## I.    BACKGROUND

On June 17, 2008, Young applied for supplemental security income and disability insurance benefits under the Social Security Act.  Young alleged disability beginning on May 16, 2006, due to painful non-cancerous tumors in her arms, leg, and feet known as osteochondromas, as well as "carpal tunnel syndrome of the right hand . . . , deformity of the right forearm, and knee and back pain."  After the Commissioner initially denied Young's claims, she sought a hearing before an administrative law judge (ALJ).

At the time of the hearing, Young was twenty-eight years old, had a tenth-grade education, and lived with her two children and parents.  Young testified she is right-handed and her medical impairments caused her right hand and arm to be weak and drop many items.  Young further reported she has difficulty standing or driving a vehicle long distances, and takes pain medication for her "excruciating" pain.  Young stated she could carry fifteen pounds for a short period of time, but could not lift twenty pounds or more, and could stand in one place for about thirty minutes.  Young also reported she commonly spends the day taking care of her thirty-pound, nineteen-month-old daughter, and does housework, cooking, and tries to walk two miles each day.  Young additionally testified she was previously employed as a factory worker, a hotel maid, and a nurse's assistant at a nursing home, but stated her disability had caused her to quit or be terminated from her jobs after May 16, 2006, because of her inability to perform the work duties.

The ALJ also considered various medical reports and the testimony of a vocational expert, who stated that a person with a residual functional capacity (RFC) to perform light work could perform Young's past jobs of factory packer and assembler.  The report of Dr. Sudhir Kumar's general physical examination of Young indicated, besides her history of osteochondromas, Young had a deformed right forearm that moderately to severely limited her ability to handle objects.  Dr. Kumar also noted, however, that Young retained other capabilities, such as full range of

motion in her spine and extremities, normal muscle strength, and no sensory abnormalities. Dr. Jim Takach reported Young had the ability to lift or carry twenty pounds occasionally and ten pounds frequently, stand for six hours in an eight hour workday, and sit for six hours in an eight hour workday. Dr. Takach concluded Young "retain[ed] the ability to function with LIGHT Work limits" with the "added restriction of NO rapid repetitive" movements of the right wrist.

Evaluating Young's claim for social security benefits pursuant to the five-step sequential evaluation process promulgated in 20 C.F.R. § 404.1520(a)(4), the ALJ determined: (1) Young "ha[d] not engaged in substantial gainful activity since May 16, 2006, the alleged onset date"; (2) Young had severe impairments, including osteochondromas and right hand, post-release, carpal tunnel syndrome; (3) these impairments did not "meet[] or medically equal[] one of the listed impairments"; (4) Young had the RFC "to perform light work"; (5) Young "is capable of performing past relevant unskilled light work as a factory packer . . . and . . . factory assembler"; and (6) Young "ha[d] not been under a disability, as defined in the Social Security Act," to receive social security benefits.

The Social Security Administration Appeals Council denied further review of the ALJ's decision, and the district court affirmed. Young appeals to this court, contending the ALJ's determination that Young could perform her past relevant work as a factory packer and assembler lacked specific findings and is not supported by substantial evidence.

## II. DISCUSSION

Because the Appeals Council denied review, the ALJ's decision is the final decision of the Commissioner. See Davidson v. Astrue, 501 F.3d 987, 989 (8th Cir. 2007). "We review the district court's decision *de novo*, and will affirm if the Commissioner's decision is supported by substantial evidence in the record as a whole." Id. Substantial evidence is defined as "less than a preponderance but is

-3-

enough that a reasonable mind would find it adequate to support the conclusion." Kluesner v. Astrue, 607 F.3d 533, 536 (8th Cir. 2010) (quoting Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008)) (internal quotation marks omitted). While we must "consider the evidence that supports the Commissioner's decision as well as the evidence that detracts from it," if "we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." Id. (quoting Finch, 547 F.3d at 935) (internal quotation marks omitted).

At the fourth step in the five-step sequential evaluation process for determining eligibility for social security benefits, an ALJ compares a claimant's RFC assessment "with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1520(f). If the ALJ determines the claimant can perform her past relevant work, the claimant is not disabled. See id. In making this determination, an "ALJ has a duty to *fully* investigate and make *explicit* findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before [the ALJ] determines that she is able to perform her past relevant work." Nimick v. Sec'y of Health & Human Servs., 887 F.2d 864, 866 (8th Cir. 1989); see also Groeper v. Sullivan, 932 F.2d 1234, 1238-39 (8th Cir. 1991). Young contends the ALJ failed to discharge this duty and lacked substantial evidence to conclude Young possessed the RFC to perform her past relevant work as a factory packer and assembler given her manipulative limitations.

To begin, we reject Young's contention to the extent she alleges the ALJ failed to develop the record or make explicit findings regarding the mental and physical demands of Young's past relevant work as a factory packer and assembler. "The ALJ may discharge this duty by referring to the specific job descriptions in the *Dictionary of Occupational Titles* [(DOT)] that are associated with the claimant's past work." Pfitzner v. Apfel, 169 F.3d 566, 569 (8th Cir. 1999). The ALJ expressly referred to the DOT in his decision, stating: "The claimant is capable of performing past relevant

unskilled light work as a factory packer as described in . . . [DOT] # 920.685-026 and unskilled light work as a factory assembler DOT # 795.687-014." The vocational expert also identified the DOT numbers associated with Young's past work as a factory packer and assembler and testified that both jobs were rated as unskilled light work. The ALJ adequately discharged his duty, and substantial evidence supports the ALJ's conclusion in this regard.

The ALJ was next required to compare these demands of Young's past factory work with Young's RFC to perform light work because such a comparison "is essential to a determination that she is capable of performing her past relevant work." Kirby v. Sullivan, 923 F.2d 1323, 1327 (8th Cir. 1991). The ALJ found Young was able to work as a factory packer and assembler as those jobs are "actually and generally [performed] in the national economy." The ALJ reached his conclusion only after "giving careful consideration" to Young's "medically determinable impairments and their impact on her ability to perform work functions," and identified several factors he considered, including "[t]he nature . . . and intensity of any pain," "precipitating and aggravating factors," "pain medications" and other "treatment," "functional restrictions," and Young's "daily activities." The ALJ also considered "all the evidence related to [Young's] prior work history, and the observations of non-medical third parties, as well as treating and examining physicians." Although the ALJ did not expressly apply these factors to the facts of Young's case in his written decision, the ALJ adequately compared the demands of Young's past work as a factory packer and assembler with Young's RFC to perform light work, including with her manipulative limitations, before determining Young could perform her past relevant work. See Nimick, 887 F.2d at 866.

Substantial evidence supported this determination, notwithstanding Young's contention that her past relevant work requires "*constant* and *frequent* reaching, handling, and fingering," and therefore "exceed[s] the limitations identified in the RFC assessment." Young testified before the ALJ that her daily activities included

taking care of her nineteen-month-old daughter and twelve-year-old son, housekeeping, cooking, and daily trying to walk two miles. The report of Dr. Kumar indicated that, although Young's ability to handle objects is moderately to severely limited due to her deformed right forearm, Young had normal muscle and grip strength, full range of motion in her spine and extremities, and no muscle atrophy or sensory abnormalities. Dr. Kumar further stated Young had the ability to hold a pen and write, touch her fingertips to her palm, oppose her thumb to her fingers, and pick up a coin. Dr. Takach also reported Young "retain[ed] the ability to function with LIGHT Work limits" with the "added restriction of NO rapid repetitive [flexion and extension] of the [right] wrist." While the Commissioner concedes Young's past relevant work as a factory packer and assembler requires "*constant* and *frequent* reaching, handling, and fingering," those requirements do not necessarily entail rapid and repetitive movement of the right wrist or otherwise exceed Young's documented limitations.

Based on these factors, "we find it possible to draw two inconsistent positions from the evidence" about whether Young retained the ability to perform her past relevant work despite her manipulative limitations. Kluesner, 607 F.3d at 536 (quoting Finch, 547 F.3d at 935) (internal quotation marks omitted). We conclude the ALJ had sufficient evidence on the record as a whole to reach his determination. See id.

## III.    CONCLUSION
We affirm.

MELLOY, Circuit Judge, Dissenting.

I find that the record and the ALJ's analysis do not support the determination that Ms. Young is able to perform her prior work. The majority finds that the record presents a close question upon which reasonable minds could differ. As a result, the

majority necessarily defers to the agency's ruling as reflected in the ALJ's opinion. See Kluenser, supra at 4. Because I believe the ALJ failed to adequately discharge the duties of developing the record and explaining its findings, I find it unnecessary to extend such deference. Accordingly, I dissent.

Among other well-documented medical issues, Ms. Young, who is right handed, suffers from a right-arm deformity and widely distributed non-cancerous bone and joint tumors of sufficient severity that several have been removed via surgery. The ALJ found that Ms. Young suffered from a severe medical impairment in that she suffers from "osteochondromas of the arms, leg, feet, and carpal tunnel syndrome of right hand with status post carpal tunnel release." The ALJ deemed Ms. Young to be "generally credible" but also found "[t]he claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."[2]

The ALJ, in effect, set forth a graduated credibility determination defined in terms of the functional-capacity standard for "light work." While there is nothing inherently objectionable about such a finding, it makes judicial review of the next step in the sequential analysis (ability to perform past relevant work) difficult. Review is difficult because the findings do not make clear which limitations the ALJ believed to be exaggerated. It would seem the only permissible reading of the ALJ's opinion is that all of Ms. Young's complaints are well-founded and that her pain and limitations are real but exaggerated. The extent of the exaggeration is such that any limitations relevant to residual functional capacity become non-credible somewhere shy of the severity required to preclude "light work."

---

[2]The reference to "the above residual functional capacity assessment" was a reference to the following finding: "After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work."

Such a reading is at odds with the fact that the ALJ credited the experts' opinions as to relevant limitations. For example, the ALJ claimed to "accord[] significant weight" to the opinion of consulting physician Dr. Sudhir Kumar. Dr. Kumar determined that "[t]he claimant is able to sit/stand/walk, however, the ability to handle objects is limited secondary to right forearm deformity thereby limiting rapid repetitive movement of the wrist but not all movement." The ALJ also credited Dr. Jim Takach's opinion that Ms. Young suffered "manipulative limitations in handling, fingering and feeling and [was subject to] the added restriction of no rapid repetitive movements of the right wrist."

In making the residual functional capacity determination, the ALJ arguably identified the importance of manual dexterity and fine motor skills, stating, "Generally, if someone can to light work, he or she can also do sedentary work, unless there are additional limiting factors, such as loss of fine dexterity or inability to sit for long periods of time. See 20 C.F.R. §§ 404.1567(a) and 416.967(a)." The ALJ proceeded, however, to identify Ms. Young's past relevant work as jobs requiring manual dexterity and repetitive movement of wrists and hands: factory packer or factory assembler. The ALJ concluded Ms. Young could perform such work because it was "light work."

In making this finding, the ALJ did not expressly address the functional limitations regarding rapid repetitive movements, manipulative limitations, or sensorial limitations as cited by Dr. Takach and Dr. Kumar. Further, the ALJ relied upon the opinion of a vocational expert even though the ALJ did not include in the hypothetical posed to the vocational expert the limitations cited by Drs. Takach and Kumar. Montgomery v. Shalala, 30 F.3d 98, 100 (8th Cir. 1994) ("'Testimony elicited by hypothetical questions that do not relate *with precision* all of a claimant's impairments cannot constitute substantial evidence to support' an administrative law judge's decision to deny benefits." (quoting Pratt v. Sullivan, 956 F.2d 830, 836 (8th Cir. 1992))). As a result, the ultimate conclusion that Ms. Young possessed the

residual functional capacity to perform the cited jobs contradicts the accepted expert's descriptions of her limitations and rests upon the opinion of a vocational expert who was not asked to consider all of Ms. Young's limitations. Against this backdrop, I would find that the ALJ failed to develop the record and make the explicit findings necessary to support the final result.

The majority correctly notes that "[t]he ALJ may discharge this duty [to develop the record and make explicit findings regarding past relevant work] by referring to the specific job descriptions in the [DOT] that are associated with claimant's past work." Pfitzner v. Apfel, 169 F.3d 566, 569 (8th Cir. 1999). I do not believe that this general rule necessarily stands for the proposition that an ALJ in every case effectively discharges its duty through mere reference to the DOT. Such a reference may suffice in many if not most cases. More is needed, however, when an ALJ accepts as credible and purports to place "significant weight" upon experts' opinions regarding limitations seemingly at odds with the physical demands of the recited job.

I would reverse and remand with instructions for the district court to remand for further administrative proceedings.

_____