# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2586

_____

Katherine M. Davidson,                     *
                                            *
        Appellant,                       *
                                            *
                                            *   Appeal from the United States
   v.                                      *   District Court for the
                                            *   Western District of Missouri.
Michael J. Astrue,                          *
                                            *
        Appellee.                        *

_____

Submitted: May 18, 2007
Filed: September 6, 2007

_____

Before MURPHY, HANSEN, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Katherine Davidson appeals the judgment of the district court[1] upholding the final decision of the Commissioner of Social Security to deny Davidson's application for disability insurance benefits. We affirm.

_____

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

In August 2002, Katherine Davidson was seriously injured after a moving car pinned her body against a wall. Davidson suffered two fractures in her left leg, and her injuries required surgery and the insertion of a rod into her leg. During her rehabilitation, Davidson also tore the anterior cruciate ligament ("ACL") in her right knee. Davidson applied for disability insurance benefits under Title II of the Social Security Act. 42 U.S.C. § 423. The evidence in the administrative record regarding Davidson's physical condition comes from two principal sources: her medical records and her testimony at the benefits hearing.

Among the most important medical records are the notes of Davidson's treating physician, Dr. Robert Sharpe. In October 2002, Dr. Sharpe recorded that Davidson had begun weight-bearing on her left leg ahead of schedule, and noted that "[h]er therapy seem[ed] to be going well." (A.R. 158). A month later, Dr. Sharpe gave Davidson permission to move from crutches to a cane for walking. In early 2003, while noting that Davidson had a slight limp, Dr. Sharpe reported that she had "no significant complaints" and "denie[d] any knee pain." (*Id.* at 156). Nevertheless, Dr. Sharpe concluded that the fractures were not healing quickly enough, and in February 2003, Dr. Sharpe performed another surgery and inserted a larger rod into the left leg. In May of that year, he noted that Davidson had "some soreness in her leg, but overall has progressed nicely," and was walking without a cane. (*Id.* at 152). A month later, Dr. Sharpe reported that Davidson experienced pain, especially after riding in a car for prolonged periods, and that her mild limp got worse during the day if she had been walking. But he stated that she had been "participating in weight-lifting activities, bicycling[,] and swimming at home, and has been doing well with that." (*Id.*). He instructed her to continue these activities and to walk for exercise. In September, Dr. Sharpe noted persistent soreness in the left knee and "a very mild limp," and recommended "an aggressive strengthening program." (*Id.* at 216). In November

2004, Dr. Sharpe noted intermittent pain and stiffness in the knee, especially after prolonged sitting.

In a hearing before an Administrative Law Judge ("ALJ"), Davidson testified that she regularly felt pain in her left knee with an intensity of six or seven on a scale of ten, and that her right knee was equally painful because of her torn ACL. She stated that she could sit for only fifteen or twenty minutes at a time, and that she usually sat with her leg elevated to waist level, or laid down with her leg elevated. Among her other activities, Davidson testified that she regularly attended her daughter's basketball games. She stated that she could not sit through the games because of the pain, and that she sat, stood, and walked throughout the games. After a game, she experienced more pain than usual.

The ALJ used the familiar five-step evaluation process to determine if Davidson was disabled. *See Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4). At steps one through four, the ALJ found that Davidson was not performing substantial gainful activity, that her medical impairments were severe, that her impairments did not meet or equal a listed impairment, and that she could not perform past relevant work. At issue on this appeal is the ALJ's finding at step five that Davidson was able to adjust to other work, and that she was therefore not disabled.

To reach this conclusion, the ALJ evaluated Davidson's credibility under the test established in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and found that Davidson was not fully credible, because her "allegations of disability are not consistent with the medical signs or findings[,] or [with] treating and examining physician reports." (A.R. 18). According to the ALJ, Davidson's treatment notes revealed that she had "made a slow but satisfactory recovery from serious leg injuries and regained the capacity for some sedentary work." (*Id.*). The ALJ noted that Davidson was relatively active. She participated in a rehabilitation program that

included walking, swimming, and strengthening, and regularly attended her daughter's basketball games.

Drawing upon this and other evidence in the record, the ALJ assessed Davidson's residual functional capacity ("RFC"). On appeal, Davidson contests two of his findings: first, that Davidson could sit up to six hours per day and could stand or walk up to two hours per day; second, that Davidson required a sit/stand option at will, and needed to occasionally elevate her leg one foot or less, but that neither limitation materially interfered with her job duties. A vocational expert testified that a person with these restrictions could work as a secretary, bookkeeper, and receptionist. These jobs exist in significant numbers in the national economy. Accordingly, the ALJ denied Davidson's application for benefits.

Davidson petitioned the Appeals Council for review, and submitted RFC assessments from her treating physician, Dr. Sharpe, and an examining physician, Dr. Paul, as new evidence. At the hearing before the ALJ, the vocational expert had testified that if Davidson needed to elevate her legs to waist level, she would be precluded from working. In response to this testimony, the Sharpe and Paul reports stated that Davidson must elevate her leg to waist level when sitting for prolonged periods, and that she could sit for no more than two hours per day, and could stand or walk for no more than one to two hours per day. The Appeals Council considered this new evidence, but found that it was irrelevant because it did not relate to the period during which Davidson was eligible for disability insurance benefits. The Appeals Council then denied review, making the ALJ's decision the final decision of the Commisioner.

The district court upheld the Commissioner's decision. We review the district court's decision *de novo*, and will affirm if the Commissioner's decision is supported by substantial evidence in the record as a whole. *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough

-4-

evidence that a reasonable mind would find adequate to support the Commissioner's decision. *Id.*

## II.

To be eligible for disability insurance benefits under Title II, a claimant must meet the statute's insurance requirements. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); 42 U.S.C. § 416(i)(2)(C), 416(i)(3)(B). "When an individual is no longer insured for Title II disability purposes, we will only consider [her] medical condition as of the date she was last insured." *Long*, 108 F.3d at 187. Davidson's insured status expired on December 31, 2003, so, like the Commissioner, we consider her condition before that date.

Davidson's central claim is that the RFC assessments of Dr. Sharpe and Dr. Paul, which she submitted to the Appeals Council after the ALJ denied her claim, should change the outcome in this case. Those reports are part of the administrative record on appeal, because the Appeals Council considered them when it decided whether to review the ALJ's decision.[2] *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000). Where, as here, the Appeals Council considers new evidence but denies review, we must determine whether the ALJ's decision was supported by substantial evidence on the record as a whole, including the new evidence. *Id.*; *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994); *Nelson v. Sullivan*, 966 F.2d 363, 366 & n.5 (8th Cir. 1992).

The Appeals Council gave the new medical reports little or no weight. It concluded that they did not affect the ALJ's decision because they did not relate to the relevant period, having been written in April 2005, some fifteen months after

---

[2]The Appeals Council stated that both reports were from Dr. Sharpe. As noted, one was from Dr. Sharpe, and one was from Dr. Paul.

Davidson's insured status expired on December 31, 2003. Our court has reached different conclusions about whether medical evidence concerning a claimant's condition at a later time is probative of her condition during the period of insured status. *Compare Rehder v. Apfel*, 205 F.3d 1056, 1061 (8th Cir. 2000) (concluding that a report by a non-treating psychologist, completed fourteen months after the relevant time period, is not probative of the claimant's condition during the relevant period) *with Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984) ("medical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status is relevant evidence because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status"). In this case, even if the reports are deemed relevant to an earlier time, we conclude that they do not undermine the ALJ's conclusion that Davidson could perform sedentary work during the relevant period.

Dr. Sharpe was a treating physician, and Dr. Paul was a one-time consultant. They gave similar RFC assessments of Davidson. A treating physician's opinion is generally entitled to substantial weight, but it does not automatically control, because the ALJ must evaluate the record as a whole. *Charles v. Barnhart*, 375 F.3d 777, 783 (8th Cir. 2004). When an ALJ discounts a treating physician's opinion, he should give "good reasons" for doing so. *Dolph v. Barnhart*, 308 F.3d 876, 878 (8th Cir. 2002). The ALJ in this case did not have the benefit of evaluating the Sharpe and Paul reports, but his decision contains two good reasons for discounting their conclusions. First, they were not supported by Dr. Sharpe's prior treatment notes, and were inconsistent with the rehabilitation regimen Dr. Sharpe devised for Davidson. Second, they were undermined by Davidson's testimony about her attendance at her daughter's basketball games.

Dr. Sharpe's treatment notes, recorded over the course of two years, contain few hints of the serious physical limitations that Dr. Sharpe and Dr. Paul would later attribute to Davidson, after the ALJ denied her disability claim. Dr. Sharpe's notes

nowhere mention that Davidson could sit for only two hours a day and could stand and walk for one to two hours, nor do they suggest that she spent the rest of the day bedridden, as such limitations imply. Instead, the notes suggest, as the ALJ found, that Davidson suffered from no more than moderate knee pain and made slow but steady progress in her rehabilitation efforts. *See Charles*, 375 F.3d at 784 (discounting treating physician's assessment where treatment notes reported no severe restrictions on walking and standing, and the claimant's condition was controlled by medication and some limitation of daily activities). Moreover, the notes approved Davidson to continue with a rehabilitation program of weight-lifting, bicycling, swimming, and walking, and recommended "an aggressive strengthening program." (A.R. 216). This vigorous rehabilitation program casts doubt on the Sharpe and Paul reports, which suggest that Davidson spent most of the day in bed. *See Choate v. Barnhart*, 457 F.3d 865, 870 (8th Cir. 2006).

The RFC assessments are also in tension with Davidson's own statements about her attendance at her daughter's basketball games. Davidson testified at the hearing that she regularly attended these games, which were played back-to-back at 5 p.m. and 7 p.m. Davidson stated that she experienced knee pain at the games, forcing her to sit, stand, and walk. But her ability to attend these games, which apparently lasted up to four hours themselves, undermines Dr. Sharpe's opinion that she could sit, stand, and walk for only three hours per day, and Dr. Paul's opinion that she could sit, stand, and walk for only four hours during an entire day. The record contains good reasons to reject the RFC assessments, because "an appropriate finding of inconsistency with other evidence alone is sufficient to discount" a treating physician's RFC. *Goff v. Barnhart*, 421 F.3d 785, 790-791 (8th Cir. 2005). Thus, the new evidence did not undermine the ALJ's decision, which was supported by substantial evidence on the record as a whole.

For similar reasons, substantial evidence supported the ALJ's finding that some of Davidson's claims about her own pain and limitations were not credible. The ALJ

gave some weight to Davidson's testimony, as evidenced by his findings that she could sit for only six hours per day and stand for two, that she required a sit/stand option at will, and that she needed to elevate her leg up to one foot off the ground. But he rejected Davidson's testimony that she needed to elevate her legs to waist level. As the ALJ noted, this restriction is unsupported by Davidson's treatment notes, and it is called into doubt by her active rehabilitation program, which included weightlifting, biking, swimming, and walking. The ALJ permissibly rejected Davidson's complaint because it was inconsistent with substantial evidence in the record. *See Polaski*, 739 F.2d at 1322.

\* \* \*

For these reasons, the judgment of the district court is affirmed.

_____