# United States Court of Appeals

### For the Eighth Circuit

_____

No. 15-2980

_____

Willie B. Boyd, Jr.

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner of Social Security

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas

_____

Submitted: March 17, 2016
Filed: August 5, 2016

_____

Before WOLLMAN, ARNOLD, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Willie Boyd, Jr. appeals the district court's[1] decision upholding the Commissioner's denial of supplemental security income (SSI) and disability

_____

[1]The Honorable Joe J. Volpe, United States Magistrate Judge for the Eastern District of Arkansas, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

insurance benefits (DIB). Upon de novo review of the district court's decision upholding the Administrative Law Judge's denial of benefits, see Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012), we affirm.

I.

Boyd filed his applications for SSI and DIB benefits on October 31, 2011 alleging disability from August 11, 2011 due to diabetes mellitus, heart problems, fatigue, and chest, back and leg pain. After his applications were denied initially and after reconsideration, he received a hearing before an Administrative Law Judge (ALJ) on May 28, 2013. Boyd was represented by counsel at the hearing. On July 24, 2013 the ALJ issued a written decision finding that Boyd was not disabled and denying his applications for SSI and DIB benefits. The Appeals counsel denied Boyd's request for review, thus the ALJ's decision stands as the final decision of the Commissioner. See Davidson v. Astrue, 501 F.3d 987, 989 (8th Cir. 2007). Boyd sought judicial review, and the district court affirmed the Commissioner's decision.

The relevant medical record reveals that in April 2007, Boyd sought medical attention for angina equivalent symptoms. A history of hypertension, Type II diabetes mellitus, and heart murmur was noted. A history taken by Norman Pledger, M.D., reflected that Boyd had recently stopped smoking but continued to smoke marijuana "almost on a daily basis." He noted that Boyd worked as a truck driver. He was treated with aspirin and prescribed sublingual nitroglycerin; a stress test and echocardiogram were ordered. Boyd was encouraged to stop smoking and avoid drug and alcohol use. He was to return for followup in six weeks. A cardiac catheritization, performed on April 20, 2007, showed non-ischemic cardiomyopathy.

In October 2007, a consultative examination by Joel Cobb, M.D., showed diabetes, paresthesia in Boyd's hands and feet, cardiomyopathy, hypertension, and chest pain. Boyd was found to have a decreased range of motion in his cervical spine,

lumbar spine, shoulders, elbows, wrists, hands, hips, knees, and ankles. Paresthesia was present in Boyd's fingertips. He showed no joint abnormalities, muscle spasms, muscle weakness, or muscle atrophy, and he exhibited normal deep tendon reflexes, gait, and coordination. Dr. Cobb assessed mild limitation with lifting, carrying, and squatting repeatedly. In March 2010, Dr. Cobb again evaluated Boyd and diagnosed Type II diabetes mellitus, hypertention, diabetic peripheral neuropathy, and chronic fatigue. He limited Boyd to "[m]oderate lifting, carrying which likely would improve with better management of blood sugars."

On December 21, 2010, January 5, 2011, and April 4, 2011, Linda Cabine, a nurse practitioner, saw Boyd for diabetes, erectile dysfunction, and hypertension. In December 2010 and January 2011, she noted that Boyd was still smoking. On all three examinations she recorded that Boyd appeared well and was in no acute distress. In November 2011, Boyd saw nurse practitioner Kathy Woods for a medication check-up. It was noted that Boyd had not visited the clinic in six months and that he was positive for twice per week chest pain, muscle cramps, and pain but negative for fatigue and exhibited no clubbing, cyanosis, or edema. Nurse Kelly assessed diabetes mellitus.

Chrystal Johnson, M.D., performed a consultative examination on January 26, 2012. Dr. Johnson noted that Boyd complained of diabetes mellitus, chronic pain in his legs and back, difficulty sleeping, headaches, poor vision, peripheral vascular disease, an inability to walk more than five to ten feet, moderate to severe pain in the middle of his back to his toes, and sharp chest pain that occurred twice a week. Boyd had decreased range of motion in his left shoulder, right knee, and both ankles. He showed tenderness to palpitation of his shoulders, wrists, hips, and ankles. Dr. Johnson also noted that Boyd had decreased reflexes in his biceps, triceps, patella, and Achilles tendon. Boyd could tandem walk slowly, but he was not able to walk on his heels or toes or squat and arise from a squatting position. Bilateral dorsalis pedis pulse were absent, and he had trace edema in the left lower extremity and stasis

dermatitis in both lower extremities. Dr. Johnson diagnosed: heart disease, leg pain with vascular disease, chest pain, arthralgias, diabetes mellitus, and hypertension. She noted that Boyd had severe limitation in his ability to walk, stand, sit, lift, carry, handle, finger, see, speak, and hear.

A state agency doctor, Larry Sauer, M.D., completed a review of Boyd's medical records in February 2012, although he did not examine Boyd. Dr. Sauer reported that Boyd had no postural or manipulative limitations and could occasionally lift and carry ten pounds, frequently lift and carry less than ten pounds, sit six hours, and stand/walk two hours during an eight hour workday.

In April 2012, Boyd was treated for chest pain in the emergency room at Baptist Health Medical Center, North Little Rock, Arkansas. A cardiac catheterization was performed which revealed non-ischemic cardiomyopathy and minimal coronary artery disease. He was treated with medication and instructed that he should not lift, drive, or engage in strenuous exercise for two days and follow-up in two months.

A hearing before an ALJ was conducted on May 28, 2013. Boyd appeared represented by counsel and testified. Boyd testified that he was 44 years of age as of the date of the hearing and has a general equivalency degree. He last worked in May 2011 as a warehouse worker and driver. He was incarcerated for 22 months for possession of cocaine and was released on August 24, 2009. He was subsequently arrested for possession of marijuana. He was on parole as of the date of the hearing. Boyd testified that he is prevented from working by diabetes; high blood pressure; and pain in his arms, left shoulder, feet, and legs. He stated that he experiences chest pain twice a day and constant pain in his legs, feet, ankles, and hands. He further stated that his feet and hands swell and he can not perform a job that requires him to answer the phone or use a keyboard due to constant pain. He uses the restroom two times an hour and urinates on himself at least once per day because he is unable to

make it to the restroom. Boyd testified that he spends most of each day sitting or lying down due to pain and swelling in his feet and legs, and he is unable to drive. He further stated that he has trouble sleeping three times a week and sometimes oversleeps. Boyd's wife testified that it is her understanding that Boyd spends most of his day sitting and lying around, complaining about pain. She stated that Boyd has difficulty walking and standing due to swelling in his feet, and he is unable to do housework.

A vocational expert ("VE") testified and noted that Boyd has relevant past work as a delivery truck driver and front-end loader operator which is medium, semi-skilled work. The ALJ posed a hypothetical question to the VE which included the residual functional capacity ("RFC") of the full range of sedentary work with the ability to occasionally climb, balance, stoop, bend, crouch, kneel, and crawl. The VE testified that an individual with Boyd's age, education, work experience, and specified RFC could not perform Boyd's past relevant work but could perform other jobs in the regional and national economy such as unskilled sedentary assembly and inspecting jobs. According to the VE, a person with Boyd's age, education, work experience, and RFC can perform all of the unskilled, sedentary jobs in the assembly and inspecting larger job categories, for example, fishing reel assembler and table worker. The VE testified that there are 150,000 to 155,000 unskilled sedentary assembly jobs and more than 200,000 unskilled, sedentary inspecting jobs in the national economy.

In his written hearing decision denying Boyd's claims, the ALJ followed the required five-step sequential evaluation process and determined: (1) Boyd had not engaged in substantial gainful activity since May 11, 2011; (2) Boyd had the following severe impairments: left shoulder pain, left leg pain, heart disease, and diabetes mellitus; (3) he did not have an impairment or combination of impairments that meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Boyd could not perform his last relevant work which required a medium and

heavy exertional level; and (5) he retained the RFC to perform work at the sedentary level of exertion with the limitation that such work must involve only occasional climbing, balancing, stooping, bending, crouching, kneeling, and crawling. Based upon the testimony of the VE, the ALJ determined that Boyd could perform a significant number of jobs existing in the national economy. Accordingly, the ALJ found Boyd not disabled and not entitled to benefits.

In this appeal, Boyd contends that the ALJ's RFC assessment at step four of the sequential evaluation process is not supported by substantial evidence in that the ALJ failed to include in his RFC determination limitation of the ability to lift, carry, and reach related to his left shoulder pain, limitation with respect to Boyd's ability to handle and finger, and limitation related to decreased reflexes in his biceps and triceps. He further asserts that the vocational expert's testimony does not support the conclusion of the ALJ, at step five, that there are a significant number of jobs available to Boyd in the national economy given his RFC.

II.

We will affirm the Commissioner's decision denying SSI and DIB benefits if it is supported by substantial evidence on the record as a whole. See Jones v. Astrue, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion." Id. (quotation omitted). We "consider the evidence that supports the Commissioner's decision as well as the evidence that detracts from it." Id. (quotation omitted). "If, after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions, we must affirm." Cypress v. Colvin, 807 F.3d 948, 950 (8th Cir. 2015).

"Prior to step four, the ALJ must assess the claimant's [RFC], which is the most a claimant can do despite his limitations." Moore v. Astrue, 572 F.3d 520, 523

-6-

(8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Social Security Ruling 96–8p, 1996 WL 374184 at *2. "[A] claimant's RFC [is] based on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." Moore, 572 F.3d at 523 (quotation and citation omitted). Accordingly, it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC.

The ALJ found that Boyd has the RFC to perform sedentary work as defined by 20 C.F.R. §§ 404.1567(a) and 416.967(a) with additional limitations. Sedentary work:

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a); 20 C.F.R. § 416.967(a)

The ALJ added the additional limitation that Boyd can only occasionally climb, balance, stoop, bend, crouch, kneel, and crawl. In reaching this conclusion, Boyd asserts that the ALJ disregarded the opinions of Dr. Cobb, who, according to Boyd, found limited range of motion in Boyd's shoulders, elbows, wrists, and hands along with paresthesia in Boyd's fingertips. However, Dr. Cobb's opinions were rendered after examining Boyd in 2007 and 2010, well before the time period in question. Further, in 2007, Dr. Cobb expressed Boyd's limitations as mild limitation in lifting,

-7-

carrying, and repeatedly squatting, and in 2010 as moderate limitation in lifting and carrying "which would likely improve with better management of blood sugars."

Second, Boyd contends that the ALJ gave insufficient weight to the findings of Dr. Johnson who examined Boyd at the request of the Commissioner on February 17, 2012. Dr. Johnson stated that Boyd experienced "severe" limitations in his ability to walk, stand, sit, lift, carry, handle, finger, see, hear, or speak. However, the ALJ discounted this opinion based upon lack of support in the examination record. For example, the ALJ noted that Boyd did not "present with clinical signs of severe restrictions in the ability to sit, stand, walk, lift, or carry." Dr. Johnson also observed "no joint or gait abnormalities, muscle spasms, muscle weakness, or muscle atrophy." Appellant App. Vol. 3, pgs 389-99. Further, upon examination, although Dr. Johnson noted reduced range of motion in Boyd's left shoulder, right wrist, and ankles and tenderness of the wrists to palpation, these findings are countered by the notation that Boyd exhibited no joint or gait abnormalities, no muscle weakness, normal grip strength, as well as the ability to hold a pen, write, and pick up a coin. An absence of clinical findings supports the rejection of a physician's opinion as to physical limitations. Davidson, 501 F.3d at 990-92 (holding inconsistencies between physician's treatment notes and physician's opinion provide support for discrediting the physician's opinions); Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006).

Third, Boyd asserts that his description of limited activities of daily living support Dr. Johnson's opinion as to Boyd's physical limitations and that the ALJ improperly discounted Boyd's testimony as to such activities. However, the ALJ adequately explained that he discounted Boyd's description of limited daily activities because it could not be adequately verified, was inconsistent with the "relatively weak medical evidence," and was not supported by corresponding specific restrictions on activities imposed by a treating physician. We conclude that the ALJ's determination in this regard is supported by substantial evidence. See Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) (court normally defers to ALJ's credibility determination if

ALJ explicitly discredits claimant's testimony and gives good reason for doing so); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (discussing credibility factors).

Finally, Boyd contends that the ALJ erred in accepting the testimony of the VE because the "VE improperly testified as to the number of jobs available to [Boyd] based upon an entire group or category of jobs, rather than giving the numbers of individual sedentary jobs." Appellant's Br. at 27. "Once it is established that the claimant cannot return to her previous occupation, the Commissioner bears the burden to show that a significant number of appropriate jobs exist for the claimant." Dipple v. Astrue, 601 F.3d 833, 836 (8th Cir. 2010); see 42 U.S.C. § 423(d)(2)(A). "One way in which the Commissioner can meet the burden of proof necessary to show that a claimant who suffers from nonexertional pain is not disabled under the Social Security Act is through the testimony of a vocational expert." Johnson v. Chater, 108 F.3d 178, 180 (8th Cir. 1997). In response to the ALJ's hypothetical question, which assumed an individual who had Boyd's age, education, work experience, and the RFC to perform the full range of sedentary work with the additional limitation of no more than occasional climbing, balancing, stooping, bending, crouching, kneeling, and crawling, the VE stated that such an individual could perform unskilled, sedentary assembly jobs and unskilled, sedentary inspecting jobs. He identified fishing reel assembler and table worker as examples. He stated that there are 500 jobs available in the state, 15,000 to 16,000 jobs available in the region and 150,000 to 155,000 jobs available in the national economy in the assembly category, and 15,000 to 16,000 jobs available in the region and 200,000 jobs available in the national economy in the inspecting category. Boyd argues that it is not clear that all of these jobs are available at the sedentary level of RFC. We disagree.

The VE acknowledged that fishing reel assembler and table worker were merely examples of the job descriptions available in the region and nationally. However, he clearly confirmed that all of the job numbers to which he referred were

unskilled sedentary jobs–jobs which comply with the hypothetical RFC provided by the ALJ. While the ALJ's written decision identified fishing reel assembler and table worker inspector as encompassing the entirety of the job numbers provided by the VE, this is of no consequence as the VE's testimony as presented constitutes substantial evidence to support the ALJ's finding at step five of the sequential evaluation process. See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) (where hypothetical includes impairments ALJ found credible and excluded those he discredited for legally sufficient reasons, VE's opinion that claimant could perform work existing in significant numbers in the national economy was substantial evidence supporting ALJ's determination).

III.

We affirm.

_____