# United States Court of Appeals

### For the Eighth Circuit

_____

No. 21-1623

_____

Alan Pierce

*Plaintiff - Appellant*

v.

Kilolo Kijakazi, Acting Commissioner of Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: December 14, 2021
Filed: January 5, 2022

_____

Before LOKEN, ARNOLD, and STRAS, Circuit Judges.

_____

ARNOLD, Circuit Judge.

After an administrative law judge with the Social Security Administration denied Alan Pierce's application for supplemental security income, Pierce sought

judicial review in the district court.[1] He challenged the ALJ's findings pertaining to his maximum capabilities, maintaining that the ALJ should have given more weight to the opinion of Pierce's treating doctor that Pierce was disabled. The district court rejected Pierce's contentions and held that substantial evidence supported the ALJ's decision. Pierce now brings his contentions to this court, but we agree with the district court and affirm.

In February 2017, Pierce worked as a forklift operator and was involved in a forklift accident. His employer discovered that he had been taking pain medication and terminated him as a result. A short time later, Pierce applied for supplemental security income, alleging that he was unable to return to work due, as relevant, to difficulties with his back. The ALJ found, and no one disputes, that Pierce's degenerative disc disease of the lumbar spine and lumbar radiculopathy are severe impairments. The heart of the parties' dispute is the extent to which those impairments limit Pierce's functioning.

Pierce testified that his impairments prevent him from working. He asserted that he cannot stand for more than ninety minutes at a time and that his back hurts after lifting twenty to thirty pounds. Pierce's treating physician largely agreed, opining that Pierce is "100% disabled" and "can not lift, squat, stoop, bend, or carry objects." He also indicated that Pierce could lift and carry only items weighing less than ten pounds and could not stand or sit more than two hours in a workday. He further opined that Pierce could not maintain a full-time work schedule and suggested that Pierce could perform some sedentary work at most. *See* 20 C.F.R. § 416.967(a).

In contrast, a non-examining physician who served as a medical consultant reviewed Pierce's medical records and concluded that he was capable of performing

[1]The Honorable Henry Edward Autrey, United States District Judge for the Eastern District of Missouri.

medium work, which the regulations describe as more physically demanding than either sedentary or light work. *See id.* He said that Pierce could occasionally lift or carry items weighing 50 pounds and could frequently lift or carry items weighing 25 pounds. He also believed that Pierce could stand or sit for about six hours in a workday. He noted, moreover, that Pierce could frequently balance, stoop, and climb ramps and stairs and could occasionally kneel, crouch, crawl, and climb ladders, ropes, and scaffolds.

The ALJ adopted neither opinion in full but instead found that Pierce could perform light work with some restrictions, namely, that he should never climb ladders, ropes, or scaffolds and only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. From this finding of Pierce's maximum capabilities given his limitations, which social-security law calls his "residual functional capacity" or "RFC," *see Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016), the ALJ concluded that Pierce could perform certain jobs and so was not entitled to supplemental security income.

We will affirm if substantial evidence supports the ALJ's decision. *See Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021). Substantial evidence is not a high bar; it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence may be less than a preponderance. *See Kraus*, 988 F.3d at 1024. So long as substantial evidence supports the ALJ's decision, we will not reverse even if substantial evidence would have supported a contrary decision or even if we would have decided the case differently. *See Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015).

Pierce faults the ALJ for determining that he was capable of doing more than sedentary work despite Pierce's testimony and the opinion of his treating physician. Of course, an ALJ need not accept as true a claimant's testimony about the extent of

his limitations. And though it is true that "a treating physician's opinion is usually entitled to great weight, it does not automatically control, since the record must be evaluated as a whole." *See Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016); *see also* 20 C.F.R. § 416.927(c)(2). Indeed, we have said that an RFC is determined by considering "all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *See Boyd*, 831 F.3d at 1020. An ALJ may give a treating physician's opinion little weight so long as he "give[s] good reasons for doing so." *See Reece*, 834 F.3d at 909.

We think the ALJ provided good reasons for giving little weight to Pierce's testimony regarding his limitations and to his treating physician's opinion on the subject. The ALJ pointed out that when Pierce underwent a neurosurgical evaluation a few weeks after his employment was terminated (and a few weeks before he applied for supplemental security income), he reported that his back pain was "a 10 on a scale of zero to ten." Nonetheless he displayed no acute distress, exhibited what the ALJ called "full strength and reflexes," had intact sensation, and had tested negative on a seated straight leg raise test, which Pierce describes in his brief as being a test "designed to detect nerve root pressure, tension, or irritation of the sciatic nerve." The discrepancy between Pierce's report of intense pain and the results of his examination suggest that he may have overstated the amount of pain he was feeling.

The ALJ also highlighted some inconsistencies in the treating physician's notes. For example, the notes reflect that for the first six months that Pierce visited his treating physician, he ambulated normally. After that time some notes indicate irregularities with Pierce's ambulation, but they also said that his gait was normal, and at least one other provider noted a normal gait at that time. So though the notes consistently reflect that Pierce had back pain, there are some inconsistencies in them that suggest that Pierce's impairments were not as debilitating as his treating physician concluded.

Another discrepancy that the ALJ identified in the treating physician's notes related to straight leg raise tests. In several treatment notes, Pierce's treating physician observed that his leg tests were positive when Pierce lay supine but negative when he was seated, though the tests in either position are meant to detect the same thing. Pierce maintains that any "discrepancy" in the tests are unremarkable because, he says, a supine test is better able to uncover lumbar radiculopathy and because, regardless of these tests, an MRI showed that he had the nerve root compression that the tests are designed to detect. Perhaps Pierce is correct. We think it reasonable nonetheless for the ALJ to consider these consistently inconsistent results as possibly indicating that the pain Pierce felt might not have been as severe or debilitating as he or his treating physician claimed, or that there were certain incongruities in his treating physician's notes that might call into question their reliability. While the alleged discrepancy on its own might not amount to substantial evidence to support the ALJ's decision, we see no reason to exclude it entirely from the scale that the ALJ used to determine whether Pierce was unable to work.

Perhaps the most persuasive medical reason the ALJ offered in support of his finding as to Pierce's RFC is the relatively conservative course of treatment that Pierce undertook to deal with the pain. *See Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016). The ALJ found that this treatment consisted "primarily of narcotic pain medication." Pierce testified that he had not had any other treatments, from surgery to physical therapy to injections. When Pierce underwent a neurosurgical evaluation two years before giving that testimony, it was recommended that he wear a lumbar brace and receive certain injections, yet he did not mention those treatments when he testified before the ALJ, and he doesn't direct us to record evidence showing that he followed through with those recommendations. We find no fault with the ALJ finding that such a conservative approach tended to show that Pierce's ailments were not disabling.

As the ALJ noted, moreover, Pierce's employment record has been sporadic at best, as over the last two decades he has gone several years without earnings. This spotty record "suggest[s] a lack of motivation to work" and "raises some questions as to whether the current unemployment is truly the result of medical problems." *See Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016).

Finally, we note that the ALJ did not accept the consulting physician's opinion in its entirety. He carefully considered both physicians' opinions and determined that Pierce's RFC lay somewhere between his treating physician's conclusion that he could perform only sedentary work and the consulting physician's conclusion that he could perform medium work. He explained that Pierce's "statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record," but given the "significant imaging, documentation submitted in support of [Pierce's] application, and [Pierce's] testimony," he found that Pierce had more limitations than the consulting physician suggested. We think the ALJ gave good reasons for the decision, and so we hold that substantial evidence supports his determination of Pierce's RFC.

Affirmed.

_____