**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1974
_____

SUSAN CHUNG,
                                        Appellant

v.

COMMISSIONER SOCIAL SECURITY

_____

On Appeal from the United States District Court for the
District of New Jersey
(District Court No. 3:23-cv-00272)
District Court Judge: Honorable Georgette Castner

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 19, 2025


(Filed: April 9, 2025)

Before:  Chagares, *Chief Judge*, Bibas and Rendell, *Circuit Judges*.
_____

O P I N I O N*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**RENDELL**, *Circuit Judge.*

Appellant Susan Chung challenges a determination by an administrative law judge (ALJ) denying her claim for Social Security Disability Insurance benefits. The District Court upheld the ALJ's decision. Because the ALJ's decision was supported by substantial evidence, we will affirm.

I.

Chung sought disability benefits for alleged impairments sustained over her 26-year career as a financial aid counselor. Following two hearings and a remand from the Appeals Council, the ALJ denied Chung's claim.

Dr. Susan Richman, a treating specialist in occupational medicine, opined on Chung's limitations in sitting, standing, lifting, handling, and other areas, stating that Chung had "marked" limitations in the use of her hands and could rarely or never reach or grasp objects. 18F at R. 771; 36F at R. 969. The ALJ found these opinions to have "reduced persuasiveness" because they were "not consistent with or supported by the objective medical evidence." A46. Several of Dr. Richman's treatment records lacked "exam findings," relying on Chung's "allegations" about her symptoms, and Dr. Richman had proposed only "conservative" treatment. A46. The ALJ also contrasted Dr. Richman's opinions with examinations conducted by Chung's primary care physician, Dr. Anna Lee, showing "within normal limits musculoskeletal exams and independence in [activities of daily living] and ambulation." A46. And Dr. Richman's diagnosis of "moderate" carpal tunnel syndrome was not supported by a 2018 electromyogram (EMG) finding the condition to be "mild." A46. Similarly, the ALJ discounted an opinion from treating

physiatrist Dr. Luguang Yang that Chung could only "occasionally" use her hands and rarely or never use her arms for reaching, 28F at R. 859, concluding it was "not supported by the exam findings" in Dr. Yang's records, A45.

Treating psychologist Dr. Marc Burd opined Chung was limited in remembering and carrying out instructions and that Chung would likely be absent from work more than three times per month. The ALJ found these opinions to have "significantly reduced persuasiveness" given that Dr. Burd's treatment records contained "largely normal mental status examinations and GAF [global assessment of functioning] scores." A44. The ALJ also noted the absence of "any explanation" for Dr. Burd's opinion on absences. A44. A similar report and questionnaire from examining psychologist Dr. Laura Cohen were unpersuasive because the "check-box" questionnaire was "not supported by or consistent with the objective medical evidence." A45. Although Chung had a "depressed mood, flat affect, and difficulty concentrating," as well as poor to fair reasoning, she had a fair fund of knowledge and was fully oriented. A45. Also, several times Dr. Lee had found Chung "not . . . depressed at all" on routine screenings. A45. Chung's own reports of "reading the newspaper, doing puzzles, and playing games with her family" indicated she had "some ability with regard to understanding, memory, concentration, and the ability to apply information." A44 (citations omitted). The ALJ agreed with Drs. Burd and Cohen that Chung had mental limitations, "but not to the degree opined." A45.

Doctors from New Jersey's Division of Disability Services (DDS) had reviewed Chung's medical records and found Chung not disabled. The ALJ discounted the portion of DDS's written decision stating that Chung could only "occasionally" "perform

3

handling, fingering, and feeling . . . due to carpal tunnel syndrome and epicondylitis," concluding that "the DDS consultants did not have the opportunity to examine [Chung] personally and did not have the opportunity to review the entire record," and Chung "is noted to have only mild carpal tunnel syndrome." A43-44.

The ALJ found Chung's own "statements concerning the intensity, persistence and limiting effects of these symptoms . . . not entirely consistent with the medical evidence and other evidence in the record." A41. Chung could "perform personal care," drive, shop, and walk; had "no problems handling stress and . . . no problems handling changes in her routine after an adjustment period"; "was still able to do a lot of housework"; and had until recently participated in family game nights. A40-42. Chung's treatment records did show limitations but not to the degree alleged by her. For example, Dr. Richman's progress notes indicated pain in Chung's "neck, back, shoulders, arms, and hands," which limited her ability to perform daily activities, A41, and Dr. Yang's notes showed pain, tenderness, and limited range of motion, but also "normal gait, normal muscle tone and [deep tendon reflexes], [and] no significant muscle atrophy," A42. Dr. Burd's notes showed depression and anxiety, but "good memory, normal attention and concentration, and normal thought processes." A43. And records from Dr. Lee showed "full range of motion of the neck and the extremities, normal muscle tone, a normal gait, and normal neurologic findings," with Dr. Lee's advice being for Chung to "use warm compresses," "do stretching exercises," and "exercise." A42.

Based on the foregoing, the ALJ found Chung had limitations in lifting, carrying, and other areas, and that she could only "perform simple, routine tasks" and "make

4

simple work-related decisions." A40. These limitations precluded Chung from performing her past work as a financial aid counselor. But the ALJ concluded Chung could perform other jobs such as "Photocopy Machine Operator" and "Laundry Sorter." A48. The ALJ therefore found Chung not disabled.

After the Appeals Council denied review, Chung filed an action in the District Court, which upheld the ALJ's decision. Chung then filed the present appeal.

## II.[1]

### A. Supportability and Consistency

Chung disputes how the ALJ evaluated the persuasiveness of her doctors' opinions. She urges the ALJ placed undue weight on the lack of exam findings in Dr. Richman's records and overlooked other positive findings. *See Allen v. Bowen*, 881 F.2d 37, 41-42 (3d Cir. 1989) (declining to "interpret [a report's] silence as affirmative evidence that the . . . physician considered [the claimant] to have no weight restrictions"). Chung also objects to the ALJ comparing Dr. Richman's opinion to Dr. Lee's records because Dr. Lee "does not treat [Chung's] musculoskeletal conditions." Appellant's Br. 31.

---

[1] The District Court had jurisdiction under 42 U.S.C. § 405(g). We have jurisdiction under 28 U.S.C. § 1291. We conduct a "plenary review" of the ALJ's legal determinations while reviewing the ALJ's factual findings for "substantial evidence." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (quoting 42 U.S.C. § 405(g)). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).

Under the post-2017 regulation applicable to Chung's claim, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The "most important factors" in evaluating the persuasiveness are "supportability" and "consistency," § 404.1520c(b)(2), which require the ALJ to examine "objective medical evidence" and "supporting explanations," as well as "other medical sources and nonmedical sources." § 404.1520c(c)(1), (2). It was therefore appropriate for the ALJ to consider the lack of findings in Dr. Richman's records. Rather than overlook positive exam findings, the ALJ discussed "positive Phalen's and Tinel's" (tests for carpal tunnel syndrome), "pain on palpation," and "decreased range of motion," among others. A46. And it was not unreasonable for the ALJ to observe that Dr. Lee's records showed less severe symptoms. *See Plummer v. Apfel*, 186 F.3d 422, 430 (3d Cir. 1999) ("[T]he Commissioner has an obligation to weigh medical evidence and make choices between conflicting accounts[.]" (citing *Williams v. Sullivan*, 970 F.2d 1178, 1187 (3d Cir. 1992)).

Chung next contends the ALJ disregarded the supportability and consistency factors for Dr. Yang and overlooked findings such as weakness, paresthesia, and tenderness in Dr. Yang's "Medical Evaluation Report." 27F. But an ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor," so long as the ALJ "weave[s] supportability and consistency throughout [his] analysis of which doctors were persuasive." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). The ALJ here concluded that Dr. Yang's opinion was not supported after noting that Dr. Yang

6

did not refer Chung to pain management, did not "raise the possibility of surgery," and "recommended long-term physical therapy, home exercises, and acupuncture." A42.

With respect to the psychologists, Chung urges the ALJ overlooked "findings such as an anxious, sad, and depressed affect with consistent mood, significant frustration related to her physical impairments, poor sleep, a pained appearance, and reduced appetite." Appellant's Br. 40. Chung also takes issue with the ALJ's reference to GAF scores as unreliable. *See* 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) (clarifying that the Commissioner has not endorsed the use of GAF scores).

We find no error. The ALJ did not overlook abnormal findings cited by Dr. Burd and Dr. Cohen but discussed them extensively. The ALJ described a mix of findings and concluded that Chung had significant mental limitations but not so much that she would be unable to perform any work. And the ALJ did not discount Dr. Burd's and Dr. Cohen's opinions "based on the naked fact that [they] [were] provided in a check-box form." *Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir. 2022). Rather, the ALJ considered the form's brevity in evaluating its persuasiveness. *See Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (noting the reduced persuasiveness of checkbox forms). With respect to GAF scores, the ALJ did not mistake them for an ultimate determination of disability but instead looked at whether Dr. Burd's own records, which included GAF scores, supported his opinion. *See Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 836 (6th Cir. 2016) (taking a "case-by-case approach to the value of GAF scores").

We are also not persuaded by Chung's argument that the ALJ misinterpreted Dr. Cohen's terminology, an argument Chung did not make to the District Court. Chung's

7

counsel provided Dr. Cohen a checkbox form that used severity terms resembling those from the Social Security Administration's Program Operations Manual but with different definitions and the nonstandard term "moderate-to-marked." U.S. Social Security Administration DI 34132.013, § F.2; 23F at R. 809. It was not unreasonable for the ALJ to categorize this last term as a "moderate" limitation. A45.

### B. Lay Opinions

Chung posits the ALJ formed unsupported lay opinions from treatment records, diagnostic tests, and Chung's daily activities. *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) ("[T]he ALJ improperly supplanted the opinions of [the claimant's] treating and examining physicians with his personal observation and speculation."). We disagree, and conclude the ALJ's use of these materials was appropriate.

An ALJ must consider "all the relevant evidence in [the] case record," 20 C.F.R. § 404.1545(a)(1), including "[o]bjective medical evidence," § 404.1529(c)(2). "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption," and is "a useful indicator to assist [the ALJ] in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms, such as pain, may have on [the claimant's] ability to work." *Id.* The ALJ is also directed to look at the claimant's "daily activities," "medication," other "treatment," and other "measures . . . to relieve . . . pain." § 404.1529(c)(3). "The ALJ—not treating or examining physicians or State agency

8

consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

Chung's contrary authority concerns the quantum of evidence necessary to overcome a treating doctor's opinion under the pre-2017 "treating source" rule. *See, e.g.*, *Morales*, 225 F.3d at 318 ("Although an ALJ may consider his own observations of the claimant . . . , they alone do not carry the day and override the medical opinion of a treating physician that is supported by the record."); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988) ("The Secretary cannot reject [the treating sources'] medical determinations simply by having the administrative law judge make a different medical judgment."); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (finding the "mere[]" fact of conservative treatment not enough to overcome treating source's opinion). Aside from the fact that the treating source rule did not apply to Chung's post-2017 claim, the cited cases do not suggest that objective medical evidence should be ignored, only that "speculative inferences" drawn from it are insufficient. *Plummer*, 186 F.3d at 429.

In particular with respect to Chung's carpal tunnel syndrome, the ALJ reasonably looked to the 2018 EMG among other factors in concluding that Chung was not as severely limited in the use of her hands as either Dr. Richman or the state DDS doctors had opined. The ALJ considered that the DDS doctors had not examined Chung personally and "offered little explanation as to what factors" supported their opinion. A44. Nor was the ALJ required to accept Dr. Richman's supposition that the "mild" finding was based on a different threshold for what counts as "moderate." A46.

9

The same applies to Chung's daily activities. The ALJ's decision does not reflect a misimpression that household activities were equivalent to what Chung could do "in an 8-hour workday, 40 hours a week." Appellant's Br. 36. Rather, the ALJ weighed them in evaluating whether Chung was as severely limited as her doctors had opined. *See Rutherford v. Barnhart*, 399 F.3d 546, 555 (3d Cir. 2005) (looking to a claimant's daily activities in evaluating limitations). The ALJ acknowledged that Chung had significant limitations but reasonably concluded she could still "perform simple, routine tasks" and "make simple work-related decisions." A40.

Similarly, the ALJ did not form a speculative lay opinion about Chung's response to treatment. The ALJ observed the contrast between Dr. Richman's opinion of complete disability and the comparatively "conservative" treatment she had recommended. *See* A46; *Pierce v. Kijakazi*, 22 F.4th 769, 773 (8th Cir. 2022) (looking to the nature of treatment among other factors in evaluating disability).

With respect to the ALJ's reference to Chung using only over-the-counter pain medication, we are not persuaded the ALJ needed to explore other reasons why Chung might forego more aggressive treatment. *See Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003) (cautioning ALJs against drawing unexplained inferences from a "failure to seek or pursue regular medical treatment"). The ALJ simply observed the tension between Dr. Richman's opinion that Chung's pain was disabling and her observation that it was "managed with over-the-counter pain medication." A42.

C.  Support for Residual Functional Capacity

Finally, Chung argues that since the ALJ discounted the persuasiveness of all medical opinion evidence, he lacked a basis for rendering a decision on Chung's residual functional capacity. We disagree.

An ALJ determines functional capacity from "all of a claimant's *credibly established limitations*." *Rutherford*, 399 F.3d at 554 (emphasis in original). When an alleged limitation is "supported by medical evidence, but is opposed by other evidence in the record," the ALJ may choose to discredit it. *Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014). Here, while the ALJ found that the opinion of the state DDS doctors had "reduced" persuasiveness, he accepted many of the same limitations, other than as to Chung's use of her hands. A43-44. For the reasons discussed previously, the ALJ did not err in finding other limitations not credibly established.

## III.

For these reasons, we will affirm the judgment of the District Court.

11